# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**FEDERAL TRADE COMMISSION,**

  *Plaintiff*,

  v.

**WALMART INC.,**

  *Defendant*.

**Case No. 1:22-cv-03372**

**Hon. Manish S. Shah**

---

**BRIEF OF NEW CIVIL LIBERTIES ALLIANCE AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANT WALMART'S MOTION TO DISMISS THE COMPLAINT**

Gregory Dolin (N.D. Ill. Reg. No. 4326294)
  *Counsel of Record*
Philip Hamburger
Brian Rosner
Mark Chenoweth
John J. Vecchione
NEW CIVIL LIBERTIES ALLIANCE
1225 19th St. NW, Suite 450
Washington, DC 20036
(202) 869-5210
greg.dolin@ncla.legal

Dated: September 13, 2022

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................ iii

**INTRODUCTION** .............................................................................................................. 1

**INTERESTS OF AMICUS CURIAE** .................................................................................. 2

**STATEMENT OF THE CASE** ........................................................................................... 3

**ARGUMENT** ..................................................................................................................... 4

    I. *HUMPHREY'S EXECUTOR* WILL NEED TO BE RECONSIDERED: FTC'S ACTION AGAINST WALMART IS UNCONSTITUTIONAL BECAUSE EXECUTIVE POWER CANNOT BE EXERCISED BY PERSONS PROTECTED FROM REMOVAL ..................................................... 5

        A. *Removal Is Part of Executive Power and Is Unqualified* .................................. 6

            <u>1.</u> Executive Power Includes at Least the Execution of the Law ....................... 6

            <u>2.</u> Executive Power More Generally Is the Action, Strength, or Force of the Nation ....... 7

            <u>3.</u> Whereas the Power of Appointment Is Qualified, the Power of Removal Is Not ......... 8

            <u>4.</u> The President's Removal Authority Is Confirmed by His Duty "to take Care that the Laws be faithfully executed" ........................................................................ 10

        B. Humphrey's Executor *Needs to Be Reconsidered* ........................................... 10

    II. *HUMPHREY'S EXECUTOR* MUST BE FOLLOWED: FTC'S ACTION AGAINST WALMART IS UNCONSTITUTIONAL BECAUSE *HUMPHREY'S* BARS THE AGENCY FROM EXERCISING EXECUTIVE POWER .......................................................................................... 11

        A. Humphrey's Executor *Forbids the FTC from Exercising Executive Power* .................. 12

        B. *This Court Has a Duty to Follow Precedent Faithfully* .................................... 13

**CONCLUSION** ................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Buckley v. Valeo,*
    424 U.S. 1 (1976)................................................................................................. 10

*Collins v. Yellen,*
    141 S. Ct. 1761 (2021)......................................................................................... 8

*Cunningham v. Neagle,*
    135 U.S. 1 (1890)............................................................................................. 6, 10

*Fleming v. United States Dep't of Agric.,*
    987 F.3d 1093 (D.C. Cir. 2021)........................................................................... 5

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
    561 U.S. 477 (2010)................................................................................... passim

*Humphrey's Executor v. United States,*
    295 U.S. 602 (1935)................................................................................... passim

*Morrison v. Olson,*
    487 U.S. 654 (1988)....................................................................................... 12, 13

*Murray's Lessee v. Hoboken Land & Improvement Co.,*
    59 U.S. (18 How.) 272 (1855) ........................................................................... 13

*Myers v. United States,*
    272 U.S. 52 (1926)................................................................................... 5, 6, 10

*Seila Law L.L.C. v. CFPB,*
    140 S. Ct. 2183 (2020)......................................................................................... 2

*State Oil Co. v. Khan,*
    522 U.S. 3 (1997)............................................................................................. 2, 5

*United States v. Arthrex, Inc.,*
    141 S. Ct. 1970 (2021)....................................................................................... 11

*Wiener v. United States,*
    357 U.S. 349 (1958)....................................................................................... 12, 13

**Statutes**

15 U.S.C. § 41 ......................................................................................................... 3

15 U.S.C. § 45 ......................................................................................................... 4

15 U.S.C. § 53 ......................................................................................................... 4

15 U.S.C. § 57 ......................................................................................................... 4

50 U.S.C. § 4143 ................................................................................................... 13

**Other Authorities**

Alexander Hamilton, Federalist No. 78,
in The Federalist ................................................................................................ 7

James Madison (June 22, 1789), in 11 Documentary History of the First Federal Congress ........ 9

John Vining (May 19, 1789),
in 10 Documentary History of the First Federal Congress 728
(Charlene Bangs Bickford, *et al.*, eds.) (The Johns Hopkins Univ. Press, 1992)...................... 8

*Justice Kagan and Judges Srinivasan and Kethledge Offer Views from the Bench*,
92 Stan. Law. In Brief (2015), https://stanford.io/3qw1UuM ................................................. 13

Philip Hamburger, *Delegation or Divesting*,
115 N.W. L. Rev. Online 88 (2020) ................................................................................. 7

*The Future of the Independent Counsel Act: Hearing Before the S. Comm. on Gov't Affairs*,
116th Cong. 243 (1999) (statement of Janet Reno, Att'y Gen. of the United States) .............. 13

**Constitutional Provisions**

U.S. Const, art. II ................................................................................................... passim

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | |
| *Plaintiff*, | |
| v. | |
| **WALMART INC.,** | |
| *Defendant.* | **Case No. 1:22-cv-03372** |
| | **Hon. Manish S. Shah** |

## INTRODUCTION

The Federal Trade Commission's rash decision to bring an enforcement action seeking monetary penalties and an injunction in federal court—particularly when the Department of Justice had declined to bring suit—has put the agency squarely on the horns of a constitutional dilemma. One horn is that *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), was wrongly decided because the FTC Commissioners cannot constitutionally enjoy protection from removal and so must not continue operating under *Humphrey's* false assurances of such protection. That is, even if FTC were to refrain from exercising executive power, Commissioners could still not benefit from removal protection. The other horn is that even under the holding of *Humphrey's*, the Commissioners cannot exercise executive power—for example, by bringing a suit in court. So, both because *Humphrey's* was wrongly decided and because of *Humphrey's* reasoning, the FTC as presently constituted, as well as its attempt to bring suit against the Defendant, are both unconstitutional.

These dual layers of analysis—under the Constitution itself and under a wayward precedent—clarify the path forward for this court. The FTC's attempt to bring suit against the Defendant is unlawful on two grounds. First, it is unlawful when one focuses on the Constitution

1

and recognizes that *Humphrey's* was mistaken. Second, it also is unlawful when one simply follows *Humphrey's*, because that precedent bars FTC from exercising executive power in suits brought in the courts. Remarkably then, this court should simultaneously reject *Humphrey's* and follow it.

To be sure, this Court cannot overrule *Humphrey's*. *See State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is this Court's prerogative alone to overrule one of its precedents."). Nevertheless, it should take into consideration that this precedent is likely to be reconsidered, if not openly overruled. *See, e.g.*, *Seila Law L.L.C. v. CFPB*, 140 S. Ct. 2183, 2198 n.2 (2020) ("The Court's conclusion that the FTC did not exercise executive power has not withstood the test of time."). This Court, therefore, should at the very least not permit the FTC to extend *Humphrey's* (which is both wrongly decided and is already on its last legs) beyond what the Supreme Court ever contemplated. *See id*. at 2192 (rejecting Government's argument to "extend [the *Humphrey's Executor*] precedent[] to a new configuration: an independent agency that wields significant executive power ….").

### INTERESTS OF AMICUS CURIAE

The New Civil Liberties Alliance ("NCLA") is a nonpartisan, nonprofit civil-rights organization devoted to defending constitutional freedoms from violations by the administrative state.[1] The "civil liberties" of the organization's name include rights at least as old as the U.S. Constitution itself: jury trial, due process of law, the right to be tried in front of an impartial and independent judge, freedom of speech, the right to live under laws made by the nation's elected lawmakers through constitutionally prescribed channels, and the right to have executive power exercised only by actors directed by the President, which is at stake in this motion to dismiss. Yet these selfsame rights are also very contemporary—and in dire need of renewed

---

[1] NCLA states that no counsel for a party authored this brief in whole or in part; and that no person or entity, other than NCLA and its counsel, made a monetary contribution intended to fund the preparation and submission of this brief.

vindication—because Congress, federal administrative agencies, and even sometimes the courts have neglected them for so long.

NCLA aims to defend civil liberties—primarily by asserting constitutional constraints on the administrative state. Although Americans still enjoy the shell of their Republic, there has developed within it a very different sort of government—a type, in fact, that the Constitution was designed to prevent. This unconstitutional administrative state within the Constitution's United States is the focus of NCLA's concern.

NCLA is particularly disturbed by government officials not answerable to the President attempting to usurp his Article II power to enforce the law. That usurpation is particularly evident here, where the Commissioners of the Federal Trade Commission ("FTC") voted to commence the present litigation after the Executive—the Attorney General—specifically declined to do so. FTC Commissioners may not be removed at will by the President. Because they are not subject to his at-will removal, the Commission may not exercise the executive power. Yet, by commencing a lawsuit for money damages and injunctive relief, FTC seeks to exercise exactly such power.

## STATEMENT OF THE CASE

FTC is a United States agency comprised of five Commissioners appointed by the President and confirmed by the Senate. 15 U.S.C. § 41. The Commissioners are not at-will appointees. The President may only remove a Commissioner for cause; specifically, "for inefficiency, neglect of duty, or malfeasance in office." *Id*.

After an investigation into third-party abuses of Walmart's "money order" services, the FTC supposed that Walmart had violated several statutes and that a civil lawsuit was necessary to obtain monetary penalties and an injunction against future violations. The FTC referred the matter to the Department of Justice; however, the Attorney General declined to bring suit. *See* Mem. of Law in Supp. of Walmart Inc.'s Mot. to Dismiss at 2 (Aug. 29, 2022), ECF No. 24.

FTC then voted to initiate the present suit in its own name. The lawsuit seeks "permanent injunctive relief, monetary relief, civil penalties, and other relief for Defendant's acts or practices …" Compl. ¶ 1 (June 28, 2022), ECF No. 1. FTC brought suit pursuant to powers purportedly granted by 15 U.S.C. §§ 45(m), 53(b), and 57b, statutes enacted in the 1970s.

Walmart has moved to dismiss the Complaint. Def. Walmart Inc.'s Mot. to Dismiss (Aug. 28, 2022), ECF No. 23. Among other arguments, Walmart contends that, because the President cannot remove FTC Commissioners at will, the agency may not exercise the executive power of initiating "litigation seeking monetary or injunctive relief." The 1970s statutes that purport to augment the FTC's power to bring the suit at bar are thus unconstitutional. Mem. of Law at 8. *Amicus* believes that Walmart's position is correct and submits this brief to provide additional points in support of Walmart's argument.

## ARGUMENT

FTC's prosecution of this suit is unlawful for two reasons—one focusing on the Constitution and the other concentrating more on precedent. To be precise, the Court should simultaneously reject *Humphrey's Executor* and follow it.

First, this court should recognize that *Humphrey's Executor* was mistaken. Contrary to what was said in that case, FTC commissioners cannot constitutionally enjoy protection from removal. So, in this suit, the FTC is unconstitutionally exercising executive power under the shelter of the removal protection that was wrongly upheld—albeit in limited fashion—in *Humphrey's Executor*. Second, as Walmart contends, this court should follow *Humphrey's* by holding that in this suit the FTC is exercising executive power that was specifically forbidden to it even in *Humphrey's*. [2]

---

[2] This brief does not address any other issue presented in the Motion to Dismiss.

4

## I. *Humphrey's Executor* Will Need to Be Reconsidered: FTC's Action Against Walmart Is Unconstitutional Because Executive Power Cannot Be Exercised by Persons Protected from Removal

It is often said that administrative power resides not only in executive agencies but also in independent agencies. The latter are independent in the sense that their heads are protected from Presidential removal and control. But under the Constitution, the executive power "shall be vested" in the President, which includes the authority to remove subordinates, and this removal authority is essential if executive power is to be accountable. *See, e.g.*, *Seila Law*, 140 S. Ct. at 2211 ("In our constitutional system, the executive power belongs to the President, and that power generally includes the ability to supervise and remove the agents who wield executive power in his stead"); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 483 (2010) ("Since 1789, the Constitution has been understood to empower the President to keep … officers accountable—by removing them from office, if necessary."); *Fleming v. United States Dep't of Agric.*, 987 F.3d 1093, 1114 (D.C. Cir. 2021) (Rao, J., concurring-in-part and dissenting-in-part) ("Article II executive power necessarily includes the power to remove subordinate officers, because anything traditionally considered to be part of the executive power 'remained with the President' unless 'expressly taken away' by the Constitution.") (quoting Letter from James Madison to Thomas Jefferson (June 30, 1789)). Indeed, because of the vast growth in executive power, it is more important than ever that such power be accountable through Presidential removal. *See Myers v. United States*, 272 U.S. 52, 134 (1926) ("The imperative reasons requiring an unrestricted power [of the President] to remove the most important of his subordinates in their most important duties must therefore control the interpretation of the Constitution as to all appointed by him.").

Although this brief will eventually ask this court to follow *Humphrey's Executor* by holding the FTC's exercise of executive power unconstitutional, it begins in this Part by pointing out that the barriers to removal upheld by that case were themselves unconstitutional. In other words, the FTC's action against Walmart is unconstitutional *both* because *Humphrey's* must be rejected and because it must be followed.

Because this court does not have the power to, on its own authority, overrule *Humphrey's*, *see State Oil*, 522 U.S. at 20*'s. See State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997), it

5

must rely on it in a way that is likely to be upheld.

A.  *Removal Is Part of Executive Power and Is Unqualified*

Removal of subordinates is part of the President's executive power.  *See Seila Law*, 140 S. Ct. at 2211; *PCAOB*, 561 U.S. at 483; *Myers*, 272 U.S. at 134.  One might think it telling that, although the Constitution has a provision for appointments, it says nothing about removals.  It is improbable, however, that the President has no constitutionally established authority to remove subordinates. And if the suggestion is that the Founders simply forgot to discuss the question, that is even less credible.  In fact, both appointments and removal were part of the Constitution's executive power.

This inclusion of hiring and firing authority within executive power is significant because the Constitution later limits Presidential appointments, but not removals.  It thereby leaves the President unlimited in his authority to remove subordinates.

1.  Executive Power Includes at Least the Execution of the Law

The President by himself cannot execute the law—so he necessarily must rely on a hierarchy of subordinates, whether officers or employees, to do most of the execution.  *See Myers*, 272 U.S. at 117; *Cunningham v. Neagle*, 135 U.S. 1, 63-64 (1890).  If such persons are essential for executing the law, then the Constitution "empower[s] the President to keep … [these] officers accountable—by removing them from office, if necessary."  *PCAOB*, 561 U.S. at 483.  As the Supreme Court explained, "[i]n our constitutional system, the executive power belongs to the President, and that power generally includes the ability to supervise and remove the agents who wield executive power in his stead."  *Seila Law*, 140 S. Ct. at 2211.  If the President cannot retain and remove those who execute the law, then he does not have the full scope of law-executing power which is in turn an essential part of his executive powers.  Thus, faithfulness to the Vesting Clause of Article II requires the recognition of the President's untrammeled authority to remove executive branch officials.

2. <u>Executive Power More Generally Is the Action, Strength, or Force of the Nation</u>

The "executive power" is much broader than merely the power to execute the laws. Undoubtedly, it includes the execution of law, but at the Founding it was understood as also including the nation's action, strength, or force. This more expansive foundation reinforces and broadens the conclusion that the President's "executive power" includes the authority to remove subordinates.

An understanding of executive power as the nation's action, strength, or force was a familiar concept at the time of the Founding. For example, Jean-Jacques Rousseau associated executive power with the society's "force," and Thomas Rutherforth defined it as the society's "joint strength." *See* Philip Hamburger, *Delegation or Divesting*, 115 N.W. L. Rev. Online 88, 112 (2020). As Alexander Hamilton understood and explained, the Constitution divides the government's powers into those of "force," "will," and "judgment"—that is, executive force, legislative will, and judicial judgment. Alexander Hamilton, Federalist No. 78, in The Federalist, 523–24.

This vision of executive power included law enforcement but also much more. Conceiving of the executive power in this way has the advantage of, for example, explaining the President's power in foreign policy, which cannot easily be understood as mere law enforcement.

That the Constitution adopted this broad vision of executive power is clear from its text— in particular, from the contrast between the President's "executive Power," U.S. Const, art. II, §1, and his duty to "take Care that the Laws be faithfully executed," *id.*, § 3. Article II then frames the President's authority in terms of *executive power*, not merely "executing the law." The latter is merely a component of the former, which on one hand is limited by the requirement that the President "take Care that the Laws be faithfully executed," but also includes the "nation's action, strength, or force."

It further follows that the more expansive the definition of "executive power" is, the broader the concomitant authority to remove inferior executive officials. If the Constitution vests in the President the "nation's action, strength, or force," it follows that he must have sufficient authority to remove people whom he views as undermining that strength or being insufficiently forceful. The second foundation matters not only because it is the more accurate

7

understanding of the President's executive power but also because it clarifies the breadth of the President's removal authority. His law-executing authority (which is part of his executive power) reveals that he can hire and fire subordinates engaged in law enforcement. And his executive power—understood more fully as the nation's action or force—shows that he can hire and fire of all sorts of subordinates.[3] *See Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021) ("The President must be able to remove not just officers who disobey his commands but also those he finds negligent and inefficient, those who exercise their discretion in a way that is not intelligent or wise, those who have different views of policy, those who come from a competing political party who is dead set against the President's agenda, and those in whom he has simply lost confidence.") (cleaned up).

### 3. Whereas the Power of Appointment Is Qualified, the Power of Removal Is Not

Although the President's executive power includes both hiring and firing authority, the Constitution treats them differently. Article II modifies and limits his power in appointments, but it leaves the power over removal untouched.

That executive power was unqualified as to removals was spelled out in 1789 by Representative John Vining of Delaware:

> [T]here were no negative words in the Constitution to preclude the president from the exercise of this power, but there was a strong presumption that he was invested with it; because, it was declared, that all executive power should be vested in him, except in cases where it is otherwise qualified; as, for example, he could not fully exercise his executive power in making treaties, unless with the advice and consent of the Senate—the same in appointing to office.

John Vining (May 19, 1789), in 10 Documentary History of the First Federal Congress 728

---

[3] To be sure, the President's power to hire Executive Branch officials is limited by the Appointments Clause. U.S. Const. art. II, § 2, cl. 2.

(Charlene Bangs Bickford, *et al.*, eds.) (The Johns Hopkins Univ. Press, 1992).

James Madison was equally emphatic, writing:

> The legislature creates the office, defines the powers, limits its duration, and annexes a compensation. This done, the legislative power ceases. They ought to have nothing to do with designating the man to fill the office. That I conceive to be of an executive nature. . . . The nature of things restrains and confines the legislative and executive authorities in this respect; and hence it is that the constitution stipulates for the independence of each branch of the government.

James Madison (June 22, 1789), in 11 Documentary History of the First Federal Congress 1032. Madison rejected the argument that limits on Presidential appointments implied similar limits on removals, writing that although the power of appointment "be qualified in the constitution, I would not extend or strain that qualification beyond the limits precisely fixed for it." *Id.*

The First Congress adopted these views. Thus, in 1789, when the first Congress considered a statutory limit on the President's removal authority it, in what has since then been referred to as "The Decision of 1789," refused to adopt it. But this label is misleading. It suggests that the Constitution had nothing to say on the question and that the President's removal authority was merely a congressional decision—as if removal rests merely on a political precedent. In fact, the Constitution's text establishes the president's removal authority by giving him executive power without limiting it. The 1789 debate is merely further evidence of the decision made in the Constitution.[4]

In short, at the time of the Founding it was clearly understood that the President's removal power is different from and stands in contrast to his power of appointments. Although both powers are part of the "executive power," the latter was substantially qualified, whereas the

---

[4] According to the Supreme Court, "Since 1789, the Constitution has been understood to empower the President to keep [his] officers accountable—by removing them from office, if necessary." *PCAOB*, 561 U.S. at 483 (2010). More accurately, the Court might have said: "Since 1787 … "

former remained absolute and unqualified.

4.   The President's Removal Authority Is Confirmed by His Duty "to take Care that the Laws be faithfully executed"

The President's removal authority is reinforced by his duty to "take Care that the Laws be faithfully executed."  U.S. Const, art II, § 3.  The President of course may, and indeed has no choice but to delegate much of his *authority* to carry the laws into execution to subordinates.  *See Myers*, 272 U.S. at 117; *Cunningham*, 135 U.S. at 63-64.  At the same time his *duty* "to take Care that the Laws be faithfully executed" is non-delegable, and he remains exclusively responsible for this function of the Government.  It therefore follows that the President must have the power to remove individuals who, in his view, do not help him fulfill, or worse yet, undermine his duty of faithful execution of the Nation's laws.  The threat of removal is the only way that the President can exercise control over his subordinates and ensure that through *their* action or inaction, *he* doesn't fail in *his* duty.  "[T]o hold otherwise would make it impossible for the President, in case of political or other difference with the Senate or Congress, to take care that the laws be faithfully executed."  *Myers*, 272 U.S. at 164 (quoted in *PCAOB*, 561 U.S. at 492, and *Seila Law*, 140 S. Ct. at 2197).

"A lawsuit is the ultimate remedy for a breach of the law, and it is to the President … that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed.'" *Buckley v. Valeo*, 424 U.S. 1, 138 (1976) (quoting U.S. Const. art. II, § 3).  It therefore follows that any official who is authorized to bring suit as a "remedy for a breach of the law" must be directly answerable to the President and removable by him.  The Take Care Clause thus underlines and confirms that the President's executive power includes a discretionary authority to remove officials who exercise his authority under that Clause.

B.  Humphrey's Executor *Needs to Be Reconsidered*

It ultimately will be necessary to reconsider the holding of *Humphrey's Executor* which upheld the constitutionality of the FTC Commissioners' tenure protections.  It is important to remember that *Humphrey's* did not dispute the President's executive power to remove Executive Branch subordinates; instead, it held that the FTC did not exercise "executive power."  *See* 295

10

U.S. at 628 ("[T]he commission acts in part quasi legislatively and in part quasi judicially …
[and] [t]o the extent that it exercises any executive function, as distinguished from executive
power in the constitutional sense, it does so … as an agency of the legislative or judicial
departments of the government."). This case, however, confirms what has long been obvious—
the FTC exercises "executive power in the constitutional sense." Thus, *Humphrey's Executor*
was and is mistaken. *See Seila Law*, 140 S. Ct. at 2198 n.2. Therefore, it will ultimately have to
be overruled.

All of this means that the FTC has been operating with Commissioners whose office has
been defined in unconstitutional terms, because when the Commissioners (and those acting under
them) exercise executive power without fear of Presidential removal, their actions run the risk of
undermining the President's duty to take care that the laws are faithfully enforced. And an
appointment of an officer appointed in violation of the Constitution is void. *See, e.g.*, *United
States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1987 (2021); *Seila Law*, 140 S. Ct. at 2196; *PCAOB*, 561
U.S. at 512. The FTC Commissioners thus hold office, and brought the current suit against
Walmart, under a constitutionally erroneous regime; hence, their action is unconstitutional.[5]

*Humphrey's Executor* should be overruled, and because the FTC acted under an
unconstitutional regime protecting its Commissioners from removal, its action against Walmart
was equally unconstitutional. This court, however, can follow more modest reasoning—as now
will be seen.

## II. *Humphrey's Executor* Must Be Followed: FTC's Action Against Walmart Is Unconstitutional Because *Humphrey's* Bars the Agency from Exercising Executive Power

Although the FTC's action is unlawful because *Humphrey's* should be overruled, even if
this court follows *Humphrey's* to the letter, it must still reach the same conclusion—the FTC's

---

[5] Such a conclusion is not inconsistent with *Collins* because that case (narrowly) dealt with
remedying and potentially voiding actions taken by an improperly appointed officials years earlier. Thus,
the question was about the scope of retrospective relief, if any. Here, in contrast, the Court need not
address FTC's previous unlawful exercise of executive power, and can instead limit its decision to FTC's
attempts to continue unlawfully exercising such power prospectively.

action is unlawful. And this court can modestly follow *Humphrey's* by holding as much—confident that even if the Supreme Court rejects that precedent, this court's judgment will be upheld.

A.    Humphrey's Executor *Forbids the FTC from Exercising Executive Power*

The FTC's action against Walmart is unlawful under *Humphrey's Executor* because that case held that FTC Commissioners can enjoy tenure protection only because the Commission does not exercise executive power. 295 U.S. at 628.

The Court did not doubt the President's power to terminate the employment of an executive officer. In fact, the Court characterized the President's Article II power to terminate as "exclusive and illimitable." *Id.* at 627.

In other words, the Court assumed that the FTC brought enforcement actions only in its own, internal adjudications, not in Article III courts. It thought such internal enforcement could be viewed as derivative of the FTC's quasi-legislative and quasi-judicial powers. But it thereby drew a sharp contrast. Whereas FTC enforcement within the agency was not "executive power in the constitutional sense," FTC enforcement outside the agency, in Article III courts, would be "executive power in the constitutional sense." *Id.* at 628.

Thus, although *Humphrey's* permits limits on removal, it does so on the clear assumption that the FTC cannot be exercising executive power in the sense of enforcement actions outside the agency—as has happened in this case. So, if *Humphrey's* is to be followed, this FTC action in the courts must be held unconstitutional.

The Supreme Court itself has recognized that its 1935 "conclusion that the FTC did not exercise executive power has not withstood the test of time." *Seila Law*, 140 S. Ct. at 2198 n.2. And even when viewed on its own terms, *Humphrey's* is an "exception[] to the President's unrestricted removal power"—an exception that is as rare as it is narrow. *Id.* at 2192. This case

12

illustrates why the Supreme Court's conclusion "has not withstood the test of time," and this court must follow *Humphrey's* by holding the FTC's action against Walmart unconstitutional.[6]

B.    *This Court Has a Duty to Follow Precedent Faithfully*

This court must follow both the Constitution and Supreme Court precedent. Although precedents, such as *Humphrey's Executor*, sometimes stray from the Constitution, in this

---

[6] Only two cases other than *Humphrey's Executor* have upheld statutory limits on the Presidential removal. *See Morrison v. Olson*, 487 U.S. 654 (1988); *Wiener v. United States*, 357 U.S. 349 (1958). Neither, however, alters the assumption in *Humphrey's* that the FTC cannot be exercising executive power. The most basic reason is that *Humphrey's* specifically concerned the FTC. Note also that *Wiener* concerned the War Claims Commission, which possessed no executive powers, instead being "established as an adjudicating body with all the paraphernalia by which legal claims are put to the test of proof." 357 U.S. at 345-55. Furthermore, as the War Claims Commission was processing claims that were to be paid by the United States and out of the federal treasury, *see* 50 U.S.C. § 4143, the Commission was essentially an Article I tribunal similar to the long-established and long-accepted Court of Claims. *Cf. Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 283 (1855) ("It is equally clear that the United States may consent to be sued, and may yield this consent upon such terms and under such restrictions as it may think just.").

*Morrison* also offers no help to the FTC's position. That case involved the unique problem of an independent counsel, who was viewed by the Court (correctly or not) as an "inferior officer," in contrast to FTC Commissioners who are indisputably "principal officers." Thus, the *Morrison* "exception" cannot be relied on here. Additionally, *Morrison* has been so widely and prominently questioned that it is not clear it can *ever* be relied upon—even as to its own facts. *See, e.g.*, *Justice Kagan and Judges Srinivasan and Kethledge Offer Views from the Bench*, 92 Stan. Law. In Brief (2015), https://stanford.io/3qw1UuM ("Kagan called Supreme Court Justice Antonin Scalia's lone dissent in *Morrison* … 'one of the greatest dissents ever written and every year it gets better.'"); *The Future of the Independent Counsel Act: Hearing Before the S. Comm. on Gov't Affairs*, 116th Cong. 243 (1999) (statement of Janet Reno, Att'y Gen. of the United States) ("[T]he Independent Counsel Act is structurally flawed and … [these] flaws cannot be corrected within our constitutional framework.").

instance the court is fortunate that the Constitution whether applied as properly understood, *see ante* § I, or as applied too abstemiously in *Humphrey's*, leads to the same conclusion—the FTC cannot constitutionally bring this suit.

This court therefore should follow both the Constitution and the precedent, resting its decision on the latter.

First, in following the Constitution, it should note that *Humphrey's* is probably mistaken, because the President enjoys constitutional authority to dismiss any other person exercising executive power. *See ante*, § I.

Second, in following precedent, this court should hold that under *Humphrey's Executor*, the FTC cannot exercise executive power in bringing suits outside its own tribunals. Its attempted prosecution of this suit in an Article III court is therefore unconstitutional and void.

## CONCLUSION

Because the FTC Commissioners are not removable at will by the President, they lack the constitutional authority to commence this lawsuit. The Motion to Dismiss should be granted.

Respectfully submitted,

/s/ Gregory Dolin
Gregory Dolin (N.D. Ill. Reg. No. 4326294)
 *Counsel of Record*
Philip Hamburger
Brian Rosner
Mark Chenoweth
John J. Vecchione
NEW CIVIL LIBERTIES ALLIANCE
1225 19th St. NW, Suite 450
Washington, DC 20036
(202) 869-5210
greg.dolin@ncla.legal

Dated: September 12, 2022

14

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of the Northern District of Illinois Local Rule 7.1 because it contains fewer than 15 pages.  This brief also complies with the typeface and type-style requirements of the Northern District of Illinois Local Rule 5.2(b) because it was prepared using Microsoft Word 2016 in 12-point font (except for footnotes which are in 11 point font) with line spacing of 1.5 lines.

/s/ Gregory Dolin
Gregory Dolin

**CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel of record.

/s/ Gregory Dolin
Gregory Dolin