**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| v. | Case No. 1:22-cv-03372 |
| WALMART INC., | Hon. Manish S. Shah |
| Defendant. | |

**REPLY IN SUPPORT OF
DEFENDANT WALMART INC.'S MOTION TO CERTIFY
THE COURT'S MARCH 27, 2023 ORDER FOR INTERLOCUTORY APPEAL**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION ..................................................................................1

ARGUMENT .......................................................................................2

I.     The FTC Distorts The Standard For Certification Under Section 1292(b) ........................2

II.    The Seventh Circuit Should Address The Validity Of The FTC's Litigation Powers.................................................................................5

III.   The Seventh Circuit Should Address Section 13(b)'s Imminence Requirement...............11

IV.   The Seventh Circuit Should Resolve The Test For Unfairness Under Section 5(a)..........14

CONCLUSION.....................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
   219 F.3d 674 (7th Cir. 2000) ...............................................................................2, 3

*Asher v. Baxter Int'l Inc.*,
   505 F.3d 736 (7th Cir. 2007) ...................................................................................3

*Axon Enter., Inc. v. FTC*,
   143 S. Ct. 890 (2023)........................................................................................10, 11

*Barr v. American Ass'n of Political Consultants, Inc.*,
   140 S. Ct. 2335 (2020) ..........................................................................................7, 8

*Boim v. Quranic Literacy Inst.*,
   291 F.3d 1000 (7th Cir. 2002) .........................................................................1, 3, 4

*Bowsher v. Synar*,
   478 U.S. 714 (1986).............................................................................................7, 8

*Collins v. Yellen*,
   141 S. Ct. 1761 (2021)............................................................................................6

*Coopers & Lybrand v. Livesay*,
   437 U.S. 463 (1978)................................................................................................3

*Costello v. BeavEx, Inc.*,
   2014 WL 12775669 (N.D. Ill. Dec. 1, 2014) .........................................................4

*Dahlstrom v. Sun-Times Media, LLC*,
   39 F. Supp. 3d 998 (N.D. Ill. 2014) .......................................................................4

*Fisons, Ltd. v. United States*,
   458 F.2d 1241 (7th Cir. 1972) ................................................................................3

*Flynn v. Exelon Corp.*,
   2022 WL 267915 (N.D. Ill. Jan. 28, 2022)...........................................................12

*FTC v. Credit Bureau Center, LLC*,
   937 F.3d 764 (7th Cir. 2019) ....................................................................2, 11, 12

*FTC v. Facebook, Inc.*,
   560 F. Supp. 3d 1 (D.D.C. 2021)..........................................................................12

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*FTC v. Kochava, Inc.*,
    2023 WL 3249809 (D. Idaho May 4, 2023) .................................................................9

*FTC v. Roomster Corp.*,
    2023 WL 1438718 (S.D.N.Y. Feb. 1, 2023).................................................................9

*FTC v. Shire ViroPharma, Inc.*,
    917 F.3d 147 (3d Cir. 2019)........................................................................................12

*FTC v. Wyndham Worldwide Corp.*,
    10 F. Supp. 3d 602 (D.N.J. 2014), *aff'd*, 799 F.3d 236 (3d Cir. 2015)....................4

*FTC v. Wyndham Worldwide Corp.*,
    799 F.3d 236 (3d Cir. 2015)........................................................................................14

*Healthcare Compare Corp. v. United Payors & United Providers, Inc.*,
    1998 WL 259979 (N.D. Ill. May 8, 1998) ................................................................3

*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935).................................................................................................1, 6

*Johnson v. Burken*,
    930 F.2d 1202 (7th Cir. 1991) ...................................................................................13

*LabMD, Inc. v. FTC*,
    894 F.3d 1221 (11th Cir. 2018) ..................................................................................14

*Olson v. Paine, Webber, Jackson & Curtis, Inc.*,
    806 F.2d 731 (7th Cir. 1986) .....................................................................................15

*Rogers v. Baxter Int'l Inc.*,
    2006 WL 8461448 (N.D. Ill. June 28, 2006) ...........................................................12

*Samuels v. Old Kent Bank*,
    1997 WL 458434 (N.D. Ill. Aug. 1, 1997) ...............................................................14

*Seila Law LLC v. CFPB*,
    140 S. Ct. 2183 (2020)............................................................................................6, 7

*Shell v. Burlington N. Santa Fe Ry. Co.*,
    2018 WL 6061473 (N.D. Ill. Nov. 20, 2018) ........................................................4, 12

*Spiegel, Inc. v. FTC*,
    540 F.2d 287 (7th Cir. 1976) .....................................................................................14

*Sterk v. Path, Inc.*,
    2014 WL 8813657 (N.D. Ill. Aug. 8, 2014) ..................................................3, 4, 12, 15

iii

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*Sterk v. Redbox Automated Retail, LLC*,
  672 F.3d 535 (7th Cir. 2012) ............................................................5

*United States v. JS&A Grp., Inc.*,
  1982 WL 1916 (N.D. Ill. Aug. 4, 1982) ...............................................5

*United States v. JS&A Grp., Inc.*,
  716 F.2d 451 (7th Cir. 1983) ........................................................4, 10

## STATUTES

15 U.S.C. § 45(a) ...........................................................................14

15 U.S.C. § 53(b) ...........................................................................11

28 U.S.C. § 1292(b) ...................................................................1, 2, 5

## OTHER AUTHORITIES

16 Charles Alan Wright et al., *Federal Practice and Procedure* (3d ed. 2023) ............................4

## INTRODUCTION

The FTC does not—and cannot—deny that the questions highlighted in Walmart's motion for certification strike at the heart of the FTC's legal authority and the proper interpretation of key provisions of the FTC Act. Those questions will inevitably dictate the viability and scope of this consequential lawsuit going forward. As long as any one of those questions satisfies the criteria for certification under 28 U.S.C. § 1292(b), Walmart's motion should be granted and the Court's order should be certified for interlocutory appeal.

The FTC rests its opposition on a distorted interpretation of the well-settled standard for certification. Contrary to the FTC's assertions, Walmart does not need to show that the Seventh Circuit is likely to overturn the Court's ruling on appeal. Rather, Walmart must show that the order involves one or more controlling legal questions whose resolution is "contestable" and will materially advance the termination of this case. *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1007 (7th Cir. 2002). Section 1292(b) imposes a mandatory duty to certify when these statutory criteria are satisfied—as they are here.

As for the constitutional validity of the FTC's litigation powers, the FTC asserts that this Court's ruling was compelled by precedent. But the FTC identifies no decision even suggesting, let alone holding, that the remedy for an unconstitutional grant of executive powers to a preexisting independent agency is to invalidate the agency's otherwise-valid removal protections. Nor does the FTC persuasively distinguish the Supreme Court decisions that instead support the remedy of invalidating the new litigation powers. And it provides no explanation whatsoever for how lower courts can deem the removal protections invalid when that would effectively overrule the Supreme Court's binding decision upholding those protections in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). In short, this case-dispositive issue is, at the very least, sufficiently contestable that the Seventh Circuit should have the opportunity to resolve it now.

So too for the Court's interpretation of Section 13(b) and Section 5(a) of the FTC Act. The Court's ruling is at odds with Seventh Circuit's threshold "ongoing or imminent" requirement recognized in *FTC v. Credit Bureau Center, LLC*, 937 F.3d 764 (7th Cir. 2019), and it conflicts with settled interpretations of these provisions embraced by the Third and Eleventh Circuits. Obtaining clarity as to the proper test is the best way to ensure a fair and efficient resolution of this litigation. Each of these legal questions will play a vital role in shaping the proceedings going forward. The Seventh Circuit should have the opportunity to resolve them at the outset.

## ARGUMENT

## I.     The FTC Distorts The Standard For Certification Under Section 1292(b)

The FTC's opposition mischaracterizes the standard for certification. As relevant here, Section 1292(b) provides: "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order [1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and that [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." 28 U.S.C. § 1292(b). The statute accordingly mandates that a district court "shall" certify orders satisfying the enumerated criteria. The decision to certify is not discretionary: As the Seventh Circuit has "emphasize[d]," district courts have a "*duty* . . . to allow an immediate appeal to be taken when the statutory criteria are met." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000) (emphasis added).

The FTC, however, departs from Section 1292(b)'s text and asserts that interlocutory appeals "should be granted 'sparingly'" and "require[] 'exceptional circumstances.'" Opp. 2-3 (ECF No. 60). These descriptions—largely drawn from inapposite precedents[1]—are rhetorical

---

[1] The FTC's cases address discretionary standards applied by the court of appeals in

window dressing.  No one disputes that only a small fraction of the countless interlocutory orders issued by district courts should be certified for appeal.  But Congress set forth clear statutory criteria for when certification is appropriate.  This Court should apply those criteria without any thumb on the scale.

As to the criteria, the FTC does not dispute that a "controlling question of law" under Section 1292(b) is one that is "likely to affect the further course of the litigation, even if it is not certain to do so."  *Sterk v. Path, Inc.*, 2014 WL 8813657, at *1-2 (N.D. Ill. Aug. 8, 2014) (Shah, J.); *see* Mot. 4 (ECF No. 55).  Instead, the FTC focuses on ratcheting up the other two criteria to the point of rendering them insurmountable.

Most notably, the FTC argues that Section 1292(b)'s requirement of "a substantial ground for difference of opinion" "rigid[ly]" forecloses certification unless the Court concludes that its order is likely to be reversed on appeal.  Opp. 2-4.  That interpretation makes little sense, as courts generally do not enter orders they believe to be reversible error.  *See, e.g.*, *Healthcare Compare Corp. v. United Payors & United Providers, Inc.*, 1998 WL 259979, at *1 (N.D. Ill. May 8, 1998) ("[I]t is not necessary to conclude that this court's decision is likely to be reversed.  If we thought the decision wrong we would not have made it.").  Indeed, the Seventh Circuit has made clear that this element merely requires that the question be "contestable."  *Boim*, 291 F.3d at 1007 (citing *Ahrenholz*, 219 F.3d at 675).

As this Court has emphasized, a question is "contestable" as long as "the Seventh Circuit ha[s] not yet addressed the question" and the movant's argument is "*plausible*," such that "[t]here

---

determining whether to accept an interlocutory appeal.  *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (referring to "persuading *the court of appeals* that exceptional circumstances justify" an interlocutory appeal (emphasis added) (quoting *Fisons, Ltd. v. United States*, 458 F.2d 1241, 1248 (7th Cir. 1972))); *Asher v. Baxter Int'l Inc.*, 505 F.3d 736, 741 (7th Cir. 2007) (discussing court of appeals' discretion to "sparingly" permit class certification appeals).

is *room to debate*" on appeal. *Sterk*, 2014 WL 8813657, at *2-3 (emphasis added); *see Dahlstrom v. Sun-Times Media, LLC*, 39 F. Supp. 3d 998, 1002 (N.D. Ill. 2014) ("substantial grounds for difference of opinion" exist when movant's position is "defensible and [not] precluded by binding precedent"). This element is therefore virtually always satisfied when lower courts addressing the question have reached "conflicting results." *Sterk*, 2014 WL 8813657, at *2; *see, e.g.*, *Shell v. Burlington N. Santa Fe Ry. Co.*, 2018 WL 6061473, at *4 (N.D. Ill. Nov. 20, 2018); *Costello v. BeavEx, Inc.*, 2014 WL 12775669, at *2 (N.D. Ill. Dec. 1, 2014). And even "questions of first impression" may be contestable when reasonable jurists could disagree over their resolution. *Boim*, 291 F.3d at 1007-08. This is especially true when the question is fundamental to the entire case—Section 1292(b) imposes a "relatively low threshold of doubt." 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3930 (3d ed. 2023); *see, e.g.*, *United States v. JS&A Grp., Inc.*, 716 F.2d 451, 452 (7th Cir. 1983) (reviewing "novel and important" questions about the FTC's authority where the arguments were "by no means frivolous"); *FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 634 (D.N.J. 2014) (certifying "novel, complex" questions regarding the FTC Act about which "reasonably jurists may differ"), *aff'd*, 799 F.3d 236 (3d Cir. 2015).[2]

The FTC also unduly constricts the scope of Section 1292(b)'s third criterion—whether "an immediate appeal from the order may materially advance the ultimate termination of the litigation." The FTC's argument (at 2) that an appeal must "accelerate proceedings" is misguided. The question is whether an immediate appeal would materially advance the litigation *if the appellant succeeds on appeal*, not whether the appeal itself will necessarily "accelerate" district court proceedings. Were it otherwise, this element would never be satisfied. As the FTC notes (at

---

[2] Although the FTC cites district court decisions noting that a "substantial likelihood" of reversal is one way to show a substantial ground for difference of opinion, Opp. 3-4, these cases do not *require* such a showing for the question to be "contestable." *Boim*, 291 F.3d at 1007.

7, 12), *all* interlocutory appeals cause short-run "delay"—but that is not a basis for denying certification. And while the FTC also suggests (at 12) that this element requires the "interlocutory appeal [to] be dispositive" of the entire case, the Seventh Circuit has made clear this is not required: "[N]either the statutory language nor the case law requires that if the interlocutory appeal should be decided in favor of the appellant the litigation will end then and there, with no further proceedings in the district court." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012). Rather, the question is simply whether "an immediate appeal *may* materially advance the ultimate termination of the litigation." *Id.* That can happen if the appeal may reduce "the size and complexity of [the] suit" and discovery, *United States v. JS&A Grp., Inc.*, 1982 WL 1916, at *2 (N.D. Ill. Aug. 4, 1982); limit the "relief available to the government," *id.*; or otherwise narrow the case in a way that could facilitate a swifter resolution, *Redbox*, 672 F.3d at 536.

## II. The Seventh Circuit Should Address The Validity Of The FTC's Litigation Powers

The FTC does not meaningfully contest that the validity of its litigation authority is a "controlling" legal question that—if resolved in Walmart's favor on appeal—would require a judgment in Walmart's favor and thus "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The FTC merely notes that its suit would not be dismissed if the Seventh Circuit decided that the agency's current structure is unconstitutional *but* chose to remedy the problem by invalidating the agency's removal protections rather than its litigation powers. Opp. 6-7. Walmart, however, has consistently argued that the constitutional problem here is not with the removal restriction enacted by Congress in 1914 and upheld by the Supreme Court in 1935, but rather with the executive litigation powers later granted to the independent agency in the 1970s—and so it is the litigation powers that should be invalidated, *not* the removal protections. The FTC does not and cannot dispute that if this purely legal argument prevails on appeal, the suit would have to be dismissed outright. Accordingly, whether the Section 1292(b) certification

standard is met boils down to whether the remedial question is "contestable"—i.e., whether Walmart's analysis is at least plausible, such that there is room for debate on appeal.

The FTC argues that the remedial question is not contestable because it is controlled by the Supreme Court's decision in *Collins v. Yellen*, 141 S. Ct. 1761 (2021). Opp. 4-5. But as Walmart has previously explained (ECF No. 24 at 13 n.3), *Collins* is inapposite here. *Collins* held that the *unconstitutionality* of a removal restriction does not alone deprive the agency of power to act or void prior agency action, absent evidence that the restriction tainted the action. 141 S. Ct. at 1788-89. But Walmart is not challenging the constitutionality of the FTC's *removal restriction*, which the Supreme Court conclusively upheld in *Humphrey's Executor* based on its view that "the FTC (as it existed in 1935) . . . exercis[ed] 'no part of the executive power.'" *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2198 (2020) (quoting *Humphrey's Executor*, 295 U.S. at 628). Walmart's argument is that Congress acted unconstitutionally in later granting this otherwise-valid independent agency the "quintessentially executive power" to seek monetary and injunctive relief in federal court. *Id.* at 2200. If anything, therefore, Walmart's argument for dismissal is *supported* by *Collins*, which reaffirmed that agency actions are "void" when they "involve[] a Government actor's exercise of power that the actor did not lawfully possess." *Collins*, 141 S. Ct. at 1787-88.

Notably, *Collins* did not even present, let alone clearly resolve, the critical question here: whether an independent agency's removal protections are rendered invalid if Congress *subsequently* grants the agency executive powers that cannot be vested in an independent agency. In *Collins* and *Seila Law*, Congress *from the outset* unconstitutionally granted the agencies sweeping executive powers and removal protections. The remedial choice in those cases therefore was between having "no [agency] at all" or "a[n] [agency] whose members are removable at will," *Seila Law*, 140 S. Ct. at 2209, and the Court unsurprisingly chose the latter, *Collins*, 141 S. Ct. at

1788 n.23 (citing *Seila Law*, 140 S. Ct. at 2207-11). By contrast, the remedial choice in this case is between having the FTC as *Congress originally created it* (independent but with no powers deemed executive) or an FTC that *no Congress has ever blessed* (non-independent and vested with sweeping executive powers).

While *Collins* does not address that remedial question, there is controlling Supreme Court precedent that resolves it in Walmart's favor: namely, the established rule that "an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *Barr v. American Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2353 (2020) (plurality op.). The FTC tries to distinguish *Barr*, as well as *Bowsher v. Synar*, 478 U.S. 714 (1986), on the ground that those cases "involved challenges to provisions that had constitutional flaws independent of the statutory schemes in which they were situated." Opp. 5. But that is demonstrably false, as each case, no less than this case, involved the "unconstitutional interaction" between a new law and an old statutory scheme. *Id.*

Start with *Bowsher*. There, Congress initially created the Comptroller General as an officer who assisted Congress in its legislative functions and was removable by Congress. 478 U.S. at 728-32. Several decades later, Congress attempted to grant the Comptroller General executive powers over federal spending. *Id.* at 732-34. Although the FTC describes that law (at 5) as having the "independent" flaw of "Congressional aggrandizement," that is wrong. The only reason the new powers were problematic was because the original statute otherwise-validly insulated the Comptroller General from presidential control. So too here: There is no difference between aggrandizing Congress by granting executive powers to legislative officers (as in *Bowsher*) and aggrandizing an independent agency by granting executive powers to quasi-legislative, quasi-judicial officers (as here). Either way, the "aggrandizement" is *entirely dependent* on the nature

of the preexisting statutory scheme. In *Bowsher*, if the scheme from the outset had made the Comptroller General removable by the President, then it would have been perfectly constitutional for the new law to grant him executive powers. Indeed, for that very reason, the parties disputed how to remedy the constitutional problem: Just as in this case, the government sought nullification of the old removal provisions, while the challengers requested invalidation of the new executive powers. 478 U.S. at 734. And the Court agreed with the challengers, deeming the newly granted executive powers "invalid[]" and declining to "[r]ecast the Comptroller General as an officer of the Executive Branch" "at this late date." *Id.* at 734-35.

*Barr* reflects the same remedial approach. In 1991, Congress originally enacted a content-neutral ban on robocalls to cell phones. 140 S. Ct. at 2344. In 2015, Congress amended that statute to exempt certain calls regarding the collection of government debt. *Id.* at 2344-45. The FTC again describes that law (at 5) as containing an "independent" "First Amendment issue," but that is also wrong. The First Amendment prohibits laws abridging speech, and the 2015 exemption instead *removed* an abridgment of speech addressing government debt. The only reason the exemption nevertheless created a constitutional "issue" was because it converted the preexisting ban into a content-based restriction on all other robocalls. *Barr*, 140 S. Ct. at 2346-47, 2352-53. Thus, once again, the parties disputed how to remedy the constitutional problem: This time, it was the challengers that sought nullification of the old restriction on all robocalls, while the government argued for invalidation of only the new exemption. *Id.* at 2349. And as in *Bowsher*, the *Barr* plurality decided to "treat[] the original, pre-amendment statute" as valid and to sever the later amendment so that "the original law stands." *Id.* at 2353 (citations omitted).

*Bowsher* and *Barr* thus strongly support Walmart's position in this case that the proper remedy for the constitutional violation under *Seila Law* is to invalidate the improper granting of

8

executive powers to an otherwise-valid independent agency, not to nullify the agency's preexisting removal protections that were upheld in *Humphrey's Executor*. Notably, the FTC cites no contrary cases addressing the remedial question presented by a statutory amendment that creates a constitutional problem in a previously lawful statutory scheme, other than two recent parallel cases that failed to grapple with the reasoning of *Bowsher* and *Barr*. *See FTC v. Kochava, Inc.*, 2023 WL 3249809 (D. Idaho May 4, 2023); *FTC v. Roomster Corp.*, 2023 WL 1438718 (S.D.N.Y. Feb. 1, 2023). At a bare minimum, therefore, *Bowsher* and *Barr* make clear that the appropriate remedy here is a contestable legal question.

All the more so because the FTC completely ignores two other related flaws with its position that Walmart raised in its motion. *First*, the FTC has no answer to the objection that a remedial holding allowing the President to remove FTC Commissioners at will would be massively overbroad because it would destroy the agency's independence even with respect to its original, quasi-legislative, quasi-judicial powers, such as agency adjudications. Mot. 7. *Second*, the FTC disregards the flagrant inconsistency between (1) its argument that "the proper remedy would be to strike the removal restriction, not void the enforcement authority," Opp. 5; and (2) its acknowledgement that the Supreme Court's upholding of the removal restriction in *Humphrey's Executor* "remains good law today—binding on this Court and the Seventh Circuit," *id.* at 6. If the FTC is right about the remedy, then *Humphrey's Executor*—and the Commissioners' independence from presidential control—is actually a dead letter. That is a major conclusion of constitutional law that the Seventh Circuit should have the chance to address.

Rather than confront these problems, the FTC simply doubles down (at 6) on its alternative argument that there is no need for *any* remedy because *Humphrey's Executor* permitted Congress to vest an independent agency with executive litigation powers. But that fallback position—which

9

this Court conspicuously declined to embrace—is even more contestable.  In a footnote, the Court

noted that "[t]here's reason to believe that the FTC may still fall within the [*Humphrey's Executor*]

exception," Op. 59 n.39 (ECF No. 52)—a formulation that itself appears to acknowledge that there

are substantial grounds for disagreement on that score.  And that is putting it mildly, as the FTC

continues to disregard all of the language in *Seila Law* cited in Walmart's motion (at 8)

demonstrating that *Humphrey's Executor* did not address and does not extend to an independent

agency that, like the post-1935 FTC, exercises significant executive power.

Finally, in light of the foregoing, the FTC cannot meaningfully distinguish the Seventh

Circuit's decision in *JS&A Group*, which accepted a Section 1292(b) appeal of certain questions

about the statutory scope of the FTC's litigation powers. 716 F.2d at 452.  The FTC is wrong that

"binding Supreme Court precedent" forecloses Walmart's position and also wrong that "numerous

other courts" have considered whether the litigation powers granted to the FTC in the 1970s can

survive *Seila Law*'s interpretation of *Humphrey's Executor*.  Opp. 6 n.1.  Thus, even more than in

*JS&A Group* itself, the constitutional validity of the FTC's litigation authority is a "novel and

important" question that warrants the Seventh Circuit's immediate review.  716 F.2d at 452.

Walmart's argument "raise[s] questions" that, to say the least, "are by no means frivolous," *id.*,

and the Seventh Circuit may well want an opportunity to consider them now even if it were

ultimately to affirm this Court's decision (as happened in *JS&A Group*), *id.* at 452, 457.

In fact, immediate review is especially appropriate given the Supreme Court's recent

emphasis that "'being subjected' to" a constitutionally "illegitimate proceeding" is a "here-and-

now injury" that cannot be fully remedied after the proceeding is over.  *Axon Enter., Inc. v. FTC*,

143 S. Ct. 890, 903-04 (2023).  While the Court did not go so far as to adopt a "newfound

enthusiasm for interlocutory review" of such claims as a matter of right (e.g., under the collateral-

order doctrine), *id.* at 904, *Axon* underscores that this Court should afford the Seventh Circuit the opportunity under Section 1292(b) to consider accepting an interlocutory appeal here.

In sum, this Court's holding that the FTC's litigation authority is constitutionally valid is a case-dispositive, purely legal question of significant importance. And because Walmart's contrary arguments are—at the very least—contestable, this is a paradigmatic case where this Court should grant Section 1292(b) certification.

## III. The Seventh Circuit Should Address Section 13(b)'s Imminence Requirement

This Court's interpretation of the "is violating, or is about to violate" language in Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), independently satisfies the criteria for certification. Mot. 9-12. The FTC's contrary arguments are unavailing.

For starters, the Court's resolution of this issue is plainly contestable. *Id.* at 9-11. The Court held that Section 13(b) mirrors the common law standard for injunctive relief, rejecting Walmart's argument that Section 13(b) is limited to ongoing or imminent unlawful conduct. Op. 48-49. The Court's interpretation of Section 13(b) is at odds with the Seventh Circuit's interpretation of the same provision in *Credit Bureau*, which repeatedly stated that Section 13(b)'s "is violating, or is about to violate" language is limited to "*ongoing* or *imminent* unlawful conduct." 937 F.3d at 772-73 (emphasis added); *see id.* at 774, 783. Remarkably, the FTC completely ignores these portions of *Credit Bureau*. Instead, the FTC notes (at 11-12) that the Seventh Circuit affirmed a permanent injunction that the district court had issued after finding "a likelihood of recurrence" of the challenged conduct. But as the FTC acknowledges (at 11), the Seventh Circuit expressly declined to endorse that standard (because it was not challenged on appeal). *See Credit Bureau*, 937 F.3d at 770. And the opinion's later interpretation of Section 13(b)'s "is violating, or is about to violate" requirement to mean ongoing or imminent misconduct is clear and unambiguous.

11

Other courts have likewise squarely held that Section 13(b) does not mirror the "'likelihood of recurrence' standard from the common law standard for an award of injunctive relief" but instead requires "ongoing or imminent illegal conduct." *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147, 155-58 (3d Cir. 2019); *see FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 26-27 (D.D.C. 2021). Such a lower-court "conflict" confirms that this question satisfies Section 1292(b)'s contestability prong. *Sterk*, 2014 WL 8813657, at *2-3; *see, e.g.*, *Shell*, 2018 WL 6061473, at *4 (finding contestability based on conflict with Eighth Circuit decision); *Rogers v. Baxter Int'l Inc.*, 2006 WL 8461448, at *2 (N.D. Ill. June 28, 2006) (same based on conflict with Ninth Circuit decision and district court decision).

Although the FTC acknowledges this conflict, it claims that the conflict is not deep enough and that the Seventh Circuit is not "substantially likely" to "follow *Shire*." Opp. 11. This is meritless. The conflict itself demonstrates that the question is at least contestable. And the FTC ignores that the Seventh Circuit has *already* embraced an interpretation of Section 13(b) tracking *Shire*'s holding that Section 13(b) "requir[es] the Commission to allege an ongoing or imminent violation to receive a permanent injunction." *Credit Bureau*, 937 F.3d at 773 (citing *Shire*, 917 F.3d at 156). In any event, Walmart is not required to prove what the Seventh Circuit will likely do on the merits; it must merely show a substantial ground for difference of opinion. Even without *Credit Bureau*, pointing to an interpretation of Section 13(b) held by multiple judges—including a unanimous decision by the Third Circuit in *Shire*—is surely sufficient.[3]

The proper interpretation of Section 13(b) is also a controlling question of law that may

---

[3] The FTC claims (at 9-11) that "a circuit split" does not "necessarily" show contestability, relying on *Flynn v. Exelon Corp.*, 2022 WL 267915, at *3 (N.D. Ill. Jan. 28, 2022). But that outlier approach to contestability is unpersuasive, as it rests on precedent about whether the law may be "clearly established" for purposes of qualified immunity despite a circuit split. *Id.*

materially advance this litigation, either by disposing of this case entirely or—at a minimum—narrowing the scope of the litigation to Walmart's current anti-fraud program. Mot. 11-12. In response, the FTC asserts that its existing allegations satisfy the "ongoing or imminent" standard anyway. Opp. 11 n.6. The FTC cites nothing in the complaint to support this conclusory assertion, nor does it dispute that the most recent conduct alleged in the complaint occurred in 2019—four years ago. Mot. 11; *see* Op. 50. In any event, this is at most a merits argument that the FTC can press in the Seventh Circuit or on remand following the appeal. And while the FTC also vaguely claims that it could amend its complaint to satisfy Section 13(b) by "adding further detail about Walmart's ongoing misconduct," Opp. 11 n.6, that late-breaking and speculative assertion is not a reason to deny certification. It is essential for the parties to know—at the outset—whether the FTC will be required to show ongoing or imminent misconduct in order to prevail here. That question will shape further proceedings in this case not only in connection with any amended complaint, but also at summary judgment and trial.[4]

For similar reasons, the FTC is wrong to argue that the fact that this case is in the "early stages of litigation" counsels against an interlocutory appeal. Opp. 12. This gets things exactly backwards. Both parties and this Court would benefit from a definitive resolution of this purely legal question at outset of the case—before they plunge into complex disputes over (1) factual issues underlying the FTC's extensive allegations about historical and outdated aspects of Walmart's anti-fraud efforts, and (2) legal issues about how such aspects should be addressed in an injunction. Moreover, the FTC does not deny that an early resolution of this legal question may

---

[4] The FTC gets nowhere in speculating (at 14) that discovery might reveal new, unalleged facts that "moot" this issue. The Seventh Circuit has stressed that the criteria for certification are evaluated "in light of the situation that exists when the district judge makes [the] certification" decision, regardless of whether "the litigation may later take a twist or turn that demotes the 'controlling' question's significance." *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991).

13

facilitate a potential settlement between the parties (Mot. 12), which has been the FTC's preferred method of resolving these cases. *See* Op. 9-10.

The FTC's sprawling complaint critiques virtually every aspect of Walmart's anti-fraud program, and all of its factual allegations concern past conduct that is irrelevant under the "ongoing or imminent" standard. The scope of Section 13(b) will thus dictate the entire course of these proceedings. It is imperative to have the legal question settled now, rather than face the potential of a do-over after years of unnecessary litigation.

## IV. The Seventh Circuit Should Resolve The Test For Unfairness Under Section 5(a)

This Court's interpretation of the term "unfair" in Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), also satisfies the criteria for certification. Mot. 12-15.

As with the other questions, this Court's interpretation of Section 5(a) is contestable. *Id.* at 12-14. The Court held that a practice may be "unfair" under Section 5(a) even if it neither violates "established public policy" nor consists of "immoral" or "wrongful" conduct. Op. 41-42. But as the Court acknowledged (*id.* at 34-35 & n.25, 38 n.27), that interpretation departs from the test for unfairness set forth by the Seventh Circuit in *Spiegel, Inc. v. FTC*, 540 F.2d 287, 293 (7th Cir. 1976), and conflicts with the definition of "unfair" articulated in *LabMD, Inc. v. FTC*, 894 F.3d 1221, 1227-29, 1231 (11th Cir. 2018), and *Samuels v. Old Kent Bank*, 1997 WL 458434, at *9 (N.D. Ill. Aug. 1, 1997). Moreover, the basis for the Court's departure—that the elements in Section 5(n) are sufficient to demonstrate an unfair act under Section 5(a)—is in serious tension with the text of Section 5(n), which is phrased as a limitation rather than a comprehensive definition. *See* Mot. 13-14. Thus, as the Third Circuit has recognized—notably, in the posture of an interlocutory appeal under Section 1292(b) following the denial of a motion to dismiss— Section 5(n)'s requirements "may be necessary rather than sufficient conditions of an unfair practice." *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 259 (3d Cir. 2015).

The FTC tries to downplay these undeniable conflicts by stressing the strength of its position on the merits. Opp. 8-10. But that does not defuse the contestability of this issue, particularly given that the conflict concerns the ongoing validity of the Seventh Circuit's longstanding *Spiegel* precedent. And while the FTC contends that this Court was not bound to follow that precedent due to "statutory changes," *id.* at 9 (citing *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734 (7th Cir. 1986)), Congress did not "change[]" Section 5(a)—the provision interpreted in *Spiegel*—at all. And the FTC fails to explain how Section 5(n)—which imposes additional *limitations* on unfairness—implicitly *expanded* Section 5(a) and abrogated circuit precedent. Mot. 14. More fundamentally, the FTC's own authority makes clear that, even if the Court believes that the addition of Section 5(n) casts doubt on *Spiegel*, that does not create the "very high degree of confidence necessary to justify disregarding [a] decision[] of a higher court." *Olson*, 806 F.2d at 742; *see id.* at 738, 741-42 (refusing to disregard controlling precedent interpreting a statute despite a later-added statutory provision casting doubt on that interpretation). This issue is a pure question of statutory interpretation properly directed to the Seventh Circuit, and certification is warranted so that court can resolve it.

Allowing the Seventh Circuit to resolve that legal question now would also promote efficiency and materially advance the termination of this case. Mot. 14-15. Beyond the arguments refuted above, the FTC's only response is its suggestion that, because this Court concluded that its "allegations are sufficient," this question is a "mixed question of law and fact." Opp. 13-14 n.7. But Walmart is challenging the Court's interpretation of the statute, not merely the sufficiency of the FTC's allegations, and it is well-settled that the "interpretation" of a statute is a purely "legal question" well-suited for interlocutory appeal. *Sterk*, 2014 WL 8813657, at *2.

## CONCLUSION

This Court should certify its March 27, 2023 order for interlocutory review.

15

Dated:  May 18, 2023

Respectfully submitted,

*/s/ Sean M. Berkowitz*

Roman Martinez (*pro hac vice*)
Drew R. Wisniewski (ARDC No. 1016351)
Jessica L. Saba (*pro hac vice*)
Blake E. Stafford (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.
Suite 1000
Washington, D.C. 20004
(202) 637-2200
roman.martinez@lw.com
drew.wisniewski@lw.com
jessica.saba@lw.com
blake.stafford@lw.com

Sean M. Berkowitz (ARDC No. 6209701)
Johanna M. Spellman (ARDC No. 6293851)
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
(312) 876-7700
sean.berkowitz@lw.com
johanna.spellman@lw.com

Hashim M. Mooppan (*pro hac vice*)
Krista Perry Heckmann (*pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3939
hmmooppan@jonesday.com
kperryheckmann@jonesday.com

*Counsel for Defendant Walmart Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 18, 2023, I filed the foregoing document with the Court through the Court's electronic filing system. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system.

 */s/ Sean M. Berkowitz*
Sean M. Berkowitz